**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

REPUBLICAN PARTY OF NORTH
CAROLINA; MARVIN K. GRAY; BRUCE
BRIGGS; FREDERIC M. GALLAGHER;
LLOYD FOWLER; JOE R. WILSON;
R. WALTER WHITE; RALPH A.
WALKER; EDGAR A. READLING, JR.;
R. HOWARD RIDDLE; WILLIAM R.
SIGMON,
Plaintiffs-Appellees,

v.

JAMES B. HUNT, Governor of North
Carolina; JUNE K. YOUNGBLOOD;
EDWARD J. HIGH; JEAN H. NELSON;              No. 94-2410
LARRY LEAKE; DOROTHY PRESSER;
NORTH CAROLINA STATE BOARD OF
ELECTIONS,
Defendants-Appellants,

and

NORTH CAROLINA ASSOCIATION OF
BLACK LAWYERS; DURHAM COUNTY
BOARD OF ELECTIONS; FORSYTH
COUNTY BOARD OF ELECTIONS;
GUILFORD COUNTY BOARD OF
ELECTIONS,
Defendants.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CA-88-263-5-F)

Argued: December 6, 1995

Decided: February 12, 1996

Before RUSSELL, WILKINS, and HAMILTON, Circuit Judges.

_____

Remanded with instructions by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Norma Smithwick Harrell, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. C. Allen Foster, PATTON BOGGS, L.L.P., Greensboro, North Carolina, for Appellees. **ON BRIEF:** Michael F. Easley, North Carolina Attorney General, Edwin M. Speas, Jr., Senior Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Robert N. Hunter, Marshall Hurley, PATTON BOGGS, L.L.P., Greensboro, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The North Carolina State Board of Elections and others (collectively "NCSBE") appeal a decision of the district court in favor of the Republican Party of North Carolina and others (collectively "RPNC"), holding that the method of electing superior court judges in North Carolina constitutes a political gerrymander intended to

deprive members of the Republican Party rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment. Specifically, by order dated November 3, 1994, the district court ruled, inter alia, that the discriminatory impact of the requirement that superior court judges stand for election on a statewide basis had resulted in Republican candidates experiencing a consistent and pervasive lack of success and exclusion from the electoral process as a whole and that these effects were likely to continue unabated into the future. In the elections of superior court judges conducted only five days later, every Republican candidate standing for the office of superior court judge was victorious at the state level. Because when it ruled the district court did not have the benefit of these election results, which were not certified until December 1994, and because we conclude that these results may substantially affect its decision, we remand for the district court to consider them in the first instance.

I.

RPNC brought this action against NCSBE, claiming that the method of electing superior court judges in North Carolina violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. In an earlier appeal, this court reversed a decision of the district court that had dismissed RPNC's complaint on the basis that it raised a nonjusticiable controversy. Republican Party of N.C. v. Martin, 980 F.2d 943 (4th Cir. 1992), cert. denied, 114 S. Ct. 93 (1993) (RPNC I). After concluding that the controversy was justiciable, we determined that the complaint failed to state a claim for which relief could be granted for violations of the First Amendment, but that the complaint adequately stated a claim under the Fourteenth Amendment. See id. at 961. Accordingly, we reversed in part, affirmed in part, and remanded for further proceedings. Id.

On remand, RPNC sought preliminary injunctive relief. Applying the balancing-of-the-hardships test set forth in Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189, 193 (4th Cir. 1977), the district court ruled that preliminary relief was appropriate. Republican Party of N.C. v. Hunt, 841 F. Supp. 722, 726-33 (E.D.N.C. 1994). In considering NCSBE's appeal from that decision, this court concluded that the district court had not abused its discretion in determining that some form of preliminary injunctive relief

3

was appropriate, but held that the preliminary relief ordered by the district court went too far. Accordingly, we modified the preliminary relief ordered by the district court. Republican Party of N.C. v. North Carolina State Bd. of Elections, Nos. 94-1057, 94-1113, 1994 WL 265955 (4th Cir. June 17, 1994) (per curiam).

Subsequently, the district court tried the case based on 311 stipulations submitted by the parties, as well as documentary evidence consisting of 132 witness statements, depositions for cross-examination and redirect, and approximately 300 exhibits. Following the submission of proposed findings of fact and conclusions of law, the court heard two days of oral argument. Thereafter, on November 3, 1994, just five days before the next scheduled elections of superior court judges, the district court entered its 134-page decision in favor of RPNC on the merits.

The district court found that RPNC had proven that the electoral system for superior court judges was implemented and maintained with a discriminatory motive of promoting the political agenda of the Democratic Party. Further, the court found that RPNC had adequately demonstrated discriminatory effects that were more than de minimis:

> The evidence shows an actual history of disproportionate results from the present electoral system--that is, despite Republicans' consistent and predictable levels of voter registration and localized support, RPNC consistently and predictably has been unable to succeed in electing a candidate to the superior court bench.

> This exclusion has been pervasive and systematic and affirmatively illustrates the consistent degradation of plaintiffs' influence on the political process as a whole. Such degradation has risen to the level of a fundamental impairment to the integrity of the current political system. Moreover, the discriminatory impact of this system on plaintiffs is not transient but is likely to continue unabated under the present electoral scheme.

J.A. 5316a. After rejecting the justifications proffered by NCSBE as facially valid but not rationally related to the statewide election

4

scheme, the court determined that the proffered justifications were pretextual in nature and did not justify the scheme.

Having thus concluded the merits of the litigation in RPNC's favor, the district court ordered a permanent injunction, requiring that tallies of the November 1994 election results be maintained for the state, division, and district levels. The court further ordered that judicial elections would be conducted such that the winners of the elections would be declared based on the results of the districtwide election "until such time as the North Carolina General Assembly takes steps to fashion an alternative remedial plan for the election of superior court judges that meets with applicable constitutional requirements." J.A. 5320a. It further enjoined NCSBE from reinstituting the district-wide primary/statewide general election system in the future. NCSBE appealed these decisions.[1]

The November 1994 elections produced results that were directly at odds with the recent prediction by the district court that Republican electoral exclusion would continue unabated into the future: All eight of the Republican candidates vying for superior court judgeships prevailed at the state level.[2] NCSBE did not move the district court to consider the results of the election pursuant to Federal Rules of Civil Procedure 59(a) or 60(b).

II.

The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In RPNC I, this court held that in order to state an equal protection claim based on political gerrymandering, a plaintiff must allege"`intentional discrimination against an identifiable political group and an actual dis-

_____

[1] The district court later denied NCSBE's motion to stay implementation of the order pending appeal, and a single judge of this court denied NCSBE's pre-election request for an emergency stay.
[2] Only five of these candidates were seated as superior court judges, however. Two Republican candidates lost at the district level and the candidacy of a third was invalidated in a separate proceeding because he was not a resident of the district.

5

criminatory effect on that group.'" RPNC I , 980 F.2d at 955 (quoting Davis v. Bandemer, 478 U.S. 109, 127 (1986) (plurality)).**3** In addressing the showing necessary to satisfy the effects portion of the test, we explained that "`a showing of more than a <u>de minimis</u> effect'" is required. Id. (quoting Bandemer, 478 U.S. at 134 (plurality)). Consequently, a plaintiff must demonstrate "that an actual or projected history of disproportionate results exists and that`the electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process as a whole.'" Id. (citation omitted) (quoting Bandemer, 478 U.S. at 132 (plurality)). In holding that RPNC had stated a claim, we stressed:

> The confluence of <u>the alleged facts, including</u> the unique claim of a near century-long dearth of political diversity among superior court judges in North Carolina, and <u>the certainty of a similar future</u>, compels our holding. Indeed, we believe that if RPNC had alleged even a <u>modicum of electoral success or access to the political process</u>, its claim might not have withstood a challenge under Rule 12(b)(6). And, whether RPNC ultimately will prevail on its claim is not before us.

Id. at 958 (emphasis added).

Although NCSBE challenges the decision of the district court on several bases, it first maintains that RPNC failed to carry its burden of showing unconstitutional discriminatory effects resulting from the statewide election of superior court judges.**4** Central to this argument is NCSBE's contention that the district court ignored the undisputed evidence of growing Republican strength and increasing competitive-

_____

**3** Although a majority of the Bandemer Court agreed that political gerrymandering claims were justiciable, the Court did not reach a consensus on the issue of what a plaintiff must allege--and ultimately prove--in order to prevail on a claim of vote dilution in the context of political gerrymandering. In RPNC I, we determined that the plurality opinion in Bandemer provided the narrowest grounds for decision and, hence, applied it. RPNC I, 980 F.2d at 955 n.22.

**4** In light of our resolution of this issue, we need not address the remaining arguments raised by NCSBE at this juncture.

6

ness of Republican candidates as demonstrated by an increase in the percentage of voters registered as Republicans; a decrease in the percentage of voters registered as Democrats; an expansion in the percentage of the vote captured by Republican candidates for office; and a reduction in the number of votes separating the candidates in those races in which the Republican candidates were not successful. According to NCSBE, this evidence of a statewide trend toward Republican competitiveness rendered it likely that Republican candidates for superior court judgeships would experience electoral success and refuted RPNC's claim that Republican influence on the electoral process as a whole would continue to be degraded. NCSBE now asserts that definitive confirmation of the accuracy of its position was demonstrated by the results of the elections conducted only five days after the district court ruled--in which all eight of the Republican candidates running for superior court judgeships were victorious at the state level.

RPNC contends that it would be inappropriate for this court to consider the 1994 election results. First, it claims that NCSBE has waived any argument that the 1994 election results should be injected into the mix by failing to timely move the district court pursuant to Federal Rules of Civil Procedure 59(a) or 60(b) to consider them. Second, RPNC maintains that because this information was not weighed by the district court in reaching its conclusion, we should not consider it. We disagree.

Generally, only facts or evidence in existence when the trial occurred, but undiscovered despite the due diligence of the moving party, may properly form the grounds for a Rule 59(a) or a Rule 60(b) motion based upon the newly discovered evidence. E.g., In re Abijoe Realty Corp., 943 F.2d 121, 124 n.3 (1st Cir. 1991); New England Mut. Life Ins. Co. v. Anderson, 888 F.2d 646, 652 (10th Cir. 1989); see also 11 Charles A. Wright et al., Federal Practice & Procedure §§ 2808, 2859 (1995) (collecting cases). Since the 1994 election results obviously would not have satisfied this standard, we do not believe that NCSBE waived consideration of the results by failing to move the district court.

Further, although it is true that ordinarily this court will not consider issues that have not been raised below, see, e.g., Singleton v.

7

Wulff, 428 U.S. 106, 120-21 (1976); Maryland Dep't of Human Resources v. United States Dep't of Agric., 976 F.2d 1462, 1473-74 (4th Cir. 1992), an exception to this general rule exists when the failure to consider an issue would result in the denial of justice, Singleton, 428 U.S. at 121. Stated differently, a showing of exceptional circumstances must be made before this court will consider matters that were not raised below. See United States v. Vanhorn, 20 F.3d 104, 114 (4th Cir. 1994).

Under these circumstances, the unique nature of voting rights litigation makes appropriate consideration of the election results occurring after the district court decision. See Westwego Citizens for Better Gov't v. City of Westwego, 906 F.2d 1042, 1045 (5th Cir. 1990) ("[G]iven the long term nature and extreme costs necessarily associated with voting rights cases, it is appropriate to take into account elections occurring subsequent to trial.") (footnote omitted); Collins v. City of Norfolk, Va., 883 F.2d 1232, 1243 (4th Cir. 1989) (referring to election results occurring after the district court decision in support of panel's conclusion that the finding of no white bloc voting by district court was clearly erroneous), cert. denied , 498 U.S. 938 (1990). The failure to consider the 1994 election results may produce a miscarriage of justice. The conclusion of the district court that the North Carolina method of electing superior court judges is unconstitutional was based on a prediction concerning the future. Subsequent events, however, have demonstrated that this prediction is, at the very least, subject to serious doubt. Because the election results cast significant doubt on the finding by the district court that the history of electoral failure by Republican candidates for superior court judgeships and exclusion from the political process as a whole will continue into the future, the 1994 election results must be taken into consideration. And, since the district court is better suited to consider this issue in the first instance, a remand for further proceedings is appropriate.

III.

For the reasons set forth above, we remand for further proceedings consistent with this opinion.

REMANDED WITH INSTRUCTIONS

8